United States District Court
Southern District of Texas
**ENTERED**
August 04, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BONIFACIO BENAVIDES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00095 |
| | § | |
| ANDREW SAUL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Bonifacio Benavides brought this action on May 13, 2021, seeking review of the Commissioner's final decision determining he was not disabled.  (D.E. 1).  On February 18, 2022, Plaintiff filed a Brief, construed as a Motion for Summary Judgment. (D.E. 21).  On June 1, 2022, Defendant filed a Brief, construed as a Cross Motion for Summary Judgment.  (D.E. 26).  For the reasons below, the undersigned **RECOMMENDS** the ALJ's decision is supported by substantial evidence.  Accordingly, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, the Commissioner's determination be **AFFIRMED**, and this case be **DISMISSED with prejudice**.

## I.    JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).  This case has been referred to the undersigned.  28 U.S.C. § 636.

## II.    BACKGROUND

Plaintiff filed an application for disability insurance benefits on November 21, 2019, alleging disability as of August 20, 2019, when he was 43 years old, due to degenerative bone disease in his lower back, sedentary disease and knee problems.  (D.E. 14-3, Pages 11 and 22; D.E. 14-4, Pages 3-4; and D.E. 14-7, Pages 6).[1]  Plaintiff has an Associate's degree in automotive technology with past relevant work as a military unit leader, assistant manager, machine operator and cook.  (D.E. 14-3, Pages 17, 22, 48-49, 70-71 and D.E. 14-8, Pages 4-5 and 29-36).  Plaintiff's applications were denied upon initial consideration on February 5, 2020 and again denied upon reconsideration on June 22, 2020.  (D.E. 14-5, Pages 2-7 and 24-26).  At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on September 30, 2020 at which Plaintiff and a vocational expert ("VE") testified.  (D.E. 14-3, Pages 34-77 and D.E. 14-5, Pages 28-29).  The ALJ issued an unfavorable decision on November 17, 2020, finding Plaintiff not disabled.  (D.E. 14-3, Pages 8-29).

The Appeals Council declined Plaintiff's request for review on March 10, 2021, making the ALJ's November 17, 2020 decision final.  (D.E. 14-3, Pages 2-5).  Plaintiff then filed this action on May 13, 2021, seeking review of the Commissioner's final decision.  (D.E. 1).

---

[1]Plaintiff received a 90% disability rating from the Department of Veterans Affairs ("VA") with conditions related to his disability as follows:  PTSD (70%); Intervertebral Disc Syndrome (20%); Limited Motion Arm (20%); Paralysis of Anterior Crural Nerve (10%); Tinnitus (10%); Limited Flexion of Knee (10%); and Paralysis of Sciatic Nerve (10%).  (D.E. 14-15, Page 49).  As of March 27, 2017, a VA rating is not legally binding on the Commissioner because the criteria applied by the two agencies is different.  20 C.F.R. § 404.1504.  However, the ALJ did state that he was "mindful that the VA has rendered a determination on the issue of disability…and has considered the evidence supporting the VA determination, to the extent it was submitted in this record."  (D.E. 14-3, Page 21).

## III.    ISSUES PRESENTED

Plaintiff contends the ALJ (1) failed to properly consider whether a cane was medically necessary and (2) failed to properly evaluate the medical opinions in the record.

## IV.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The burden has been described as more than a scintilla but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted). "Even though review is limited, 'it is imperative that [the court] scrutinize the

record in its entirety to determine the reasonableness of the decision reached by the Social Security Administration and whether substantial evidence exists to support it.'" *Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted). The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's RFC, claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## V.   APPLICABLE LAW AND ANALYSIS[2]

### A.   Residual Functional Capacity ("RFC")

An RFC is an assessment, based on all relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) ("RFC involves both

---

[2]The undersigned has thoroughly reviewed the entire record as well as the parties' medical summaries in their respective motions and will cite to the relevant portions of the record as needed.

exertional and non-exertional factors.")  RFC refers to the most a claimant is able to do despite physical and mental limitations.  20 C.F.R. § 404.1545(a).  The ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  The ALJ is not required to incorporate limitations in the RFC that are not supported in the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") (citation omitted); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) ("The ALJ is responsible for determining an applicant's residual functional capacity" and this determination must be supported by substantial evidence) (citation omitted).

Here, the ALJ determined Plaintiff had the RFC to perform light work except that he could never climb ladders, ropes or scaffolds; was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; and was limited to detailed but not complex jobs; and could frequently interact with the general public. (D.E. 14-3, Page 16).  Finding Plaintiff could not perform his past relevant work and considering his age, education, work experience and RFC as well as the VE's testimony, the ALJ held Plaintiff could perform the occupations of photocopy machine operator, merchandise clerk or office cleaner.  (D.E. 14-3, Pages 22-23).

### B.    USE OF A CANE

Plaintiff first asserts the "ALJ erred in failing to consider whether a hand-held assistive device was medically necessary" and accounted for in the RFC finding.  (D.E. 21, Pages 14-16).  In support, Plaintiff cites to a single record from September 12, 2018, where Plaintiff was fitted for and trained in the use of a single point cane due to a chronic, unsteady gait.  (D.E. 21, Page 14; D.E. 14-14, Pages 88-89).  Plaintiff does not refer the Court to any other records where Plaintiff's use of a cane is noted, let alone noted as required for ambulation.[3]  The ALJ determined Plaintiff "has not established that he is unable to ambulate effectively," citing to objective medical evidence in the record which did not show a disorder of the spine resulting in motor loss accompanied by sensory or reflex loss or evidence of spinal stenosis or arachnoiditis.  (D.E. 14-3, Page 14).  Further, contrary to Plaintiff's assertions, the ALJ did cite an August 14, 2018 VA administrative record which indicated Plaintiff had called requested a walking cane.  (D.E. 14-3, Page 18; D.E. 14-14, Page 91).  The ALJ also thoroughly discussed the record over the subsequent two years noting a June 27, 2019 treatment record noting Plaintiff's muscle strength was normal in his lower extremities (D.E. 14-3, Page 18; D.E. 14-16, Page 16); a VA mental

---

[3]According to the regulations, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Joseph B. v. Saul*, No. 4:19-cv-1285, at *4 n. 6 (S.D. Tex. Nov. 30, 2020) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b)).

health note from September 18, 2019 where Plaintiff reported he recently quit his job as a cook in a restaurant because "the employees were lazy and he did not have an issue calling them out" (D.E. 14-3, Page 19; D.E. 14-14, Page 25);[4] records indicating Plaintiff attended college full time on campus from September 2019 until he graduated in December 2019 with an associate's degree in automotive technology (D.E. 14-3, Page 19; D.E. 14-14, Page 14);[5] physical therapy treatment notes from November 13, 2019 where Plaintiff was seen for a functional capacity evaluation and is noted as not using an assistive device (D.E. 14-3, Page 19 and D.E. 14-15, Page 52); a March 2020 emergency room record where Plaintiff, being treated for the flu, reported he had just returned home from a weeklong visit to the Netherlands and was noted having a normal physical exam with a normal gait and not using an ambulatory aid (DE. 14-3, Page 19; D.E. 14-17, Pages 12 and 20); and a September 24, 2020 orthopedic treatment record where Plaintiff, receiving knee injections which Plaintiff reported relieved his symptoms, was observed to have a normal gait, to be full weight bearing, using no assistive devices and denying instability.[6]  (D.E. 14-17, Pages 30 and

_____

[4]In a December 17, 2019 disability report, Plaintiff reported he stopped working on August 20, 2019, his alleged disability onset date, because he had a "confrontation with [an]other employee [at the restaurant where he was a cook] and decided to go back to school."  (D.E. 14-8, Page 3).  Plaintiff also reported working as a machine operator in a machine shop from June 2017 to March 2019 and, immediately after that, as a line cook in a restaurant from March 2019 to August 2019, with continuing earlier employment as either a cook or machine operator starting in 2012.  (D.E. 14-8, Page 29).  Plaintiff reported during his work at the restaurant in 2019, he would stand, walk, stoop, kneel, crouch and crawl eight hours a day and his work as a machine operator required him to stand and walk eight hours a day and kneel six hours a day and crouch seven hours a day.  (D.E. 14-8, Pages 30-31).

[5]This is consistent with Plaintiff's hearing testimony that he graduated with an associate's degree in automotive technology in December 2019, one month after he filed his application for benefits.  (D.E. 14-3, Page 49).

[6]The undersigned notes that Plaintiff reported knee pain bilaterally which was aggravated by walking but was relieved by the injections.  (D.E. 14-17, Page 30).  Also, there are additional treatment notes in the record indicating Plaintiff ambulated without the use of the cane.  For example, on December 19, 2018, Plaintiff was noted as ambulating without assistance with a slow, steady gait and an August 23, 2019 record indicated Plaintiff "ambulates in today with chronic c/o left shoulder pain" wanting to "start a paperwork trail for his disability."  (D.E. 14-14, Pages 41 and 74).  Physical

32).   The ALJ also discussed Plaintiff's reported activities from reports in August and September 2019 as well as January 2020 where Plaintiff reported he enjoyed watching motor shows, working on automobiles, going to the ranch for long periods of time, playing video games, hunting, gambling, driving daily and taking care of his 15 year-old son.  (D.E. 14-3, Pages 15-16 and 21; D.E. 14-8, Pages 46; and D.E. 14-14, Pages 24, 31 and 37).[7] Accordingly, the ALJ was not required to incorporate or further discuss an assistive device when making an RFC determination in this case.  *Ross v. Comm'r*, No. 6:20-cv-306, 2021 WL 2935650, at *1 (E.D. Tex. July 13, 2021) (Finding ALJ's decision to not include an assistive device in his determination was supported by substantial evidence where records show Plaintiff was ambulatory with a steady gait).  In short, substantial evidence in the record supports a conclusion that a cane was not medically necessary for Plaintiff.

Further, even if the ALJ had erred, reversal is appropriate only if the Plaintiff was prejudiced.  *Ripley*, 67 F.3d at 557.  Such prejudice "can be established by showing that

---

therapy notes from October 15, 2019, indicate Plaintiff "was able to ambulate on treadmill x 10 min, distance .32 miles, speed 2.0; pain after task 10/10."  (D.E. 14-16, Page 68).   No mentions are made of Plaintiff using an assistive device in any of these records.  Additionally, July and September 2020 orthopedic records noted Plaintiff denied instability, he had a normal gait, he was full weight bearing and used no assistive device.  (D.E. 14-17, Pages 36, 38, 41 and 43).

[7] As discussed by the ALJ, the undersigned also notes Plaintiff later reported in his hearing testimony difficulty performing daily activities because of his ailments.  (D.E. 14-8, Page 64 and D.E. 14-3, Pages 60-66).  The undersigned further notes that the ALJ questioned the Plaintiff about his physical limitations and daily activities, specifically how long he could walk, sit, stand, drive, shop, climb stairs and perform chores, and Plaintiff never mentioned the use of a cane in any of his responses or elsewhere in his testimony.  (D.E. 14-3, Pages 60-65).  Plaintiff testified he could lift ten ounces, could drive a car, grocery shop, could walk 15 meters or stand for five minutes before needing to sit down, could sit for ten minutes before needing to stand, could climb one flight of stairs with the use of a handrail, required his wife's assistance to dress and performed no household chores.  (D.E. 14-3, Pages 60-63).  The ALJ specifically discounted Plaintiff's statements concerning the intensity, persistence and limiting effects as not consistent with the medical and other evidence in the record.  (D.E. 14-3, Page 17); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference).

additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at n. 22 (citing *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir.1984)). Here, Plaintiff argues the ALJ failed to develop the record regarding the medical necessity of his cane, asserting remand is required for the ALJ to evaluate whether the medication documentation establishes Plaintiff's need to use a cane, whether use of a cane is medically necessary and to question the vocational expert about what jobs, if any, Plaintiff could perform using a cane if required. (D.E. 21, Pages 15-16). However, the undersigned finds this argument is too speculative to warrant remand. As discussed above, the ALJ thoroughly reviewed the record, noting the multiple instances from 2019 and 2020 where Plaintiff was not using an assistive device and was ambulatory with a steady gait as well as weight bearing after he was given a cane in September 2018 upon request. The ALJ further considered Plaintiff's most recent work history from 2018 and 2019 as both a cook and machine operator, both of which required a significant amount of standing and walking as well as Plaintiff's reported daily activities. Plaintiff has failed to make a sufficient showing of prejudice and points to no existing or new sufficient evidence that, had the ALJ developed the record further, would have been offered at the hearing and changed the result. Plaintiff offers only supposition that further review or development of the record, including further questioning of the Plaintiff, would lead to a different result. The ALJ did not have a duty to request further or clarifying information when the record already contained substantial evidence upon which to make a determination as discussed above. The ALJ questioned Plaintiff at

the hearing regarding his physical limitations affecting his ability to stand, walk, climb stairs and sit and Plaintiff never mentioned the use of any assistive device.  Further, even if the ALJ committed error by not explicitly making a finding on Plaintiff's use of a cane, the error was harmless because the record does not support a finding that Plaintiff's use of a cane was medically necessary for the reasons discussed above.

### C.  MEDICAL OPINIONS IN THE RECORD

Plaintiff next asserts the ALJ failed to properly evaluate the medical opinions in the record, specifically those of the state agency medical and psychological consultants and Randy Bingham, P.A.  (D.E. 21, Pages 16-25).  Plaintiff argues the ALJ failed to adequately explain the supportability and consistency factors pursuant to 20 C.F.R. § 404.1520c as discussed below.

While there may be opinions in the record that a plaintiff is more limited in certain areas than found by the ALJ, the ALJ is not bound by these assessments so long as the ALJ sufficiently explained the weight assigned to their opinions.  *Beck v. Barnhart*, 205 F. App'x 207, 213-14 (5th Cir. 2006); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). An ALJ may reject any opinion, in whole or in part, "when the evidence supports a contrary conclusion."  *Martinez*, 64 F.3d at 176.  Further, there is a Social Security Administration rule regarding RFC determinations for all claims filed on or after March 27, 2017 stating ALJs are no long required to give controlling weight to a treating physician's opinion as previously mandated.  20 C.F.R. § 404.1520c.  Because Plaintiff filed his application for disability insurance benefits after this time, the new rule applies which provides the

Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the factors outlined in the rule, the most important of which are supportability[8] and consistency.[9] *Id.* at § 404.1520c(b)(2).

In determining the persuasiveness of each medical opinion or prior administrative finding, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship), (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id*. § 404.1520c(c). An ALJ must explain how the supportability and consistency factors for a medical opinion or a prior administrative medical finding were considered. *Id*. §§ 404.1520c(b)(2). An ALJ may, but is not required, to discuss how the medical source's relationship with the claimant, specialization, or other factors were considered. *Id*. When an ALJ determines there are multiple medical opinions or prior administrative medical findings concerning the same issue that are equally persuasive in terms of supportability

---

[8]For supportability, the regulations state "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(1).

[9]For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative findings(s) will be." 20 C.F.R. § 404.1520c(2).

and consistency in the record, the ALJ must further discuss how the opinions or prior administrative findings were considered. *Id.* § 404.1520c(b)(2).  In this circumstance, the ALJ also must discuss how the relationship with the claimant, specialization, or other factors were considered. *Id.*  Lastly, while "[t]here have never been formalistic rules governing how an ALJ must articulate his decision, [a]t a minimum, the ALJ's explanation must permit meaningful judicial review" of the supportability and consistency factors. *Walsh v. Comm'r of Soc. Sec.*, No. 4:21-cv-552-O-BP, 2022 WL 2874710, at *5 (N.D. Tex. July 7, 2022) (citations omitted).[10]

On January 30, 2020, during the initial consideration of Plaintiff's application, Dr. Margaret Meyer, a state agency psychiatrist, opined Plaintiff could remember locations and work-like procedures; could understand, remember and carry out very short and simple instructions; was moderately limited in his ability to understand, remember and carry out detailed instructions; could maintain attention and concentration for extended periods; could perform activities within a schedule, maintain regular attendance and be punctual;

---

[10]Whether an ALJ's analysis constitutes a sufficient explanation of supportability and consistency is "whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not requires the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett v. Kijakazi*, No. 4:20-cv-4002, 2021 WL 5545233, at *3-4 (S.D. Tex. Nov. 26, 2021) (citation omitted) (Remanding case because the ALJ rejected not only the opinion of a treating physician for purposes of assessing the plaintiff's RFC but also rejected that same treating physician's underlying primary medical diagnosis that the plaintiff suffered from fibromyalgia based on an incorrect interpretation of the record).  An ALJ must articulate how supportability and consistency were considered.  *Howen v. Saul*, No. H-19-4358, 2021 WL 1169331, at *6-7 (S.D. Tex. Mar. 25, 2021) (While the ALJ stated he considered an opinion and then incorporated even more restrictive limitations into the RFC, the RFC was in fact not more limited than the suggested RFC and therefore, remand was appropriate).

However, these words need not be expressly used as the Fifth Circuit has held "[a] case will not be remanded simply because the ALJ did not use 'magic words.'"  *Ranson v. Comm'r of Soc. Sec.*, No. 4:21-cv-157-JMV, 2022 WL 2438840, at *4 (N.D. Miss. July 5, 2022) (citing *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) ("Remand is only appropriate 'where there is no indication the ALJ applied the correct standard'") (citation omitted).

could sustain an ordinary routine without special supervision; could work in coordination with or in proximity to others without being distracted by them; could make simple, work-related decisions; could complete a normal workday and workweek without interruptions from psychologically based symptoms; was moderately limited in his ability to interact appropriately with the general public; could ask simple questions or request assistance; could accept instructions and respond appropriate to criticism from supervisors; was moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; could maintain socially appropriate behavior; was moderately limited in his ability to respond appropriately to change in the work setting; could travel in unfamiliar places or use public transportation; and could set realistic goals or make plans independently of others.  (D.E. 14-4, Pages 10-11).  In sum, Dr. Meyer opined Plaintiff could "understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings."  (D.E. 14-4, Page 11).  On reconsideration, Dr. Sarah Jackson, a state agency psychologist, concurred with Dr. Meyer on June 19, 2020.  (D.E. 14-4, Pages 22-24).

On February 4, 2020, Dr. Roberta Herman opined Plaintiff could perform a full range of light work,[11] finding Plaintiff could occasionally lift and/or carry 20 pounds and

---

[11]The regulations define light work as: "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567.

frequently lift and/or carry 10 pounds; stand and/or walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; was unlimited in his ability to push and/or pull; and had no postural, manipulative, visual, communicative or environmental limitations.  (D.E. 14-4, Pages 8-9).  Dr. Laurence Ligon, on reconsideration, concurred with Dr. Herman on June 15, 2020.  (D.E. 14-4, Pages 21-22).

The ALJ determined "[t]he State agency opinions are partially persuasive," finding "only mild limitations in the area of understand, remember and apply information and mild limitation in the area of adapt or manage oneself based on his reports that he attended school full time on campus to finish his Associate's degree and testified he graduated in December 2019; and he enjoys working on automobiles, hunting and gambling; and he recently returned from a weeklong visit in the Netherlands.  Additional physical limitations were included to account for the claimant's knee pain and obesity."  (D.E. 14-3, Page 22).

The ALJ, when making his RFC determination, concluded Plaintiff had the RFC to perform a limited, rather than full, range of light work, attributable to the ALJ's inclusion of Plaintiff's knee pain and obesity as well as Plaintiff's reported activities.[12][13]  (D.E. 14-3, Pages 16 and 21).  Therefore, the ALJ found Plaintiff was more physically limited than

---

[12]Plaintiff again asserts that at the hearing, he testified he was more limited and could no longer perform many of these activities.  However, as stated previously, the ALJ specifically discounted Plaintiff's statements concerning the intensity, persistence and limiting effects as not consistent with the medical and other evidence in the record and this credibility finding is entitled deference.  (D.E. 14-3, Pages 17 and 22); *Chambliss*, 269 F.3d at 522.

[13]The ALJ stated that "[t]he claimant's obesity was taken into consideration in determining residual functional capacity.  The standing, walking, lifting, carrying, and postural limitations in the residual functional capacity are in part due to obesity."  (D.E. 14-3, Page 15).  The ALJ later stated Plaintiff's "complaints of back pain and neck pain were considered in limiting him to a light exertional level with additional limitations in the residual functional capacity to account for knee pain and obesity."  (D.E. 14-3, Page 21).

as opined by Drs. Herman and Ligon.[14]  Concurring with Drs. Meyer and Jackson, the ALJ also determined Plaintiff was limited to performing detailed, but not complex, jobs.  (D.E. 13, Page 16).  While Drs. Meyer and Jackson opined Plaintiff was moderately limited in his ability to interact with the public, the ALJ found Plaintiff could frequently interact with the general public, attributable to the ALJ's reasoning that Plaintiff attended school full time on campus to finish his associate's degree after his alleged onset date as well as travel internationally in addition to Plaintiff's reported daily activities.  (D.E. 14-3, Pages 16 and 22 and D.E. 14-4, Pages 11 and 22-24).

PA Bingham opined on November 22, 2019 that based upon his review of Plaintiff's subjective complaints of his physical symptoms including pain, objective testing, and physical therapy treatment notes, Plaintiff "would be limited to sedentary work that would require multiple breaks through the work schedule.  This would more than likely include a limited number of hours per day that he would be able to work.  With these limitations I feel it would be difficult for [Plaintiff] to hold a meaningful position of employment and therefore [he] should be considered for full disability."  (D.E. 14-15, Pages 49-50).

The ALJ found PA Bingham's opinion was "not entirely persuasive" as it was not supported by the objective medical evidence or Plaintiff's reported activities of daily living.  (D.E. 14-3, Pages 19-20).  Citing to records previously discussed in this M & R, *see infra* pages 6-7, the ALJ noted PA Bingham's opined limitations were inconsistent with other records, including several after PA Bingham's November 2019 opinion, indicating Plaintiff

---

[14]An opinion that Plaintiff has the ability to perform a full range of light work supports a finding that he can perform a modified range of light work.  20 C.F.R. § 404.1567.

was less physically restricted. (D.E. 14-13, Pages 19-22). Further, the ALJ discussed the physical therapy records from Six Points Physical Therapy relied upon by PA Bingham. (D.E. 14-3, Page 20 and D.E. 14-15, Page 50). While PA Bingham supports his opinion largely on a physical therapy treatment plan and "assessment upon completion" of Plaintiff's abilities, the ALJ correctly notes that while Plaintiff was referred to Six Points on September 12, 2019 with a diagnosis of chronic pain, he participated in only five out of 12 prescribed sessions with his last session on November 4, 2019. (D.E. 14-3, Page 20 and D.E. 14-16, Pages 68-75). The ALJ also notes that while attempts were made to continue his treatment, there was no response. (D.E. 14-3, Page 20 and D.E. 14-16, Page 75). [15] Further, as concisely summarized by Defendant, the ALJ, in addition to medical records, also considered Plaintiff's history of daily marijuana use, his non-medical reason for terminating his employment in August 2019 as well as his reported activities, which included taking care of his son, driving, watching motor shows, working on cars, hunting, going to the ranch, gambling and playing video games. (D.E. 26, Pages 4-5 and D.E. 14-14, Pages 24, 31 and 37). In short, the ALJ's analysis details why he found PA Bingham's opinion to be neither consistent with nor supported by the record. Further, as noted by the ALJ, the conclusion that a claimant is entitled to disability is a legal finding reserved for

---

[15]Additionally, while Plaintiff alleges the ALJ should have discussed all records cited by PA Bingham in support of his opinion, an "ALJ's failure to mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when "the ALJ's decision states explicitly that he considered the entire record in his decision." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). There is no "statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings." *Hammond*, 124 F. App'x at 851. Here, the ALJ explicitly stated he considered the entire record and a review of the ALJ's decision shows it was thoroughly reviewed. (D.E. 14-3, Page 13).

the Commissioner.  20 C.F.R. § 404.1527(d)(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th

Cir. 2003) ("Among the opinions by treating doctors that have no special significance are

determinations that an applicant is 'disabled' or 'unable to work' [as] [t]hese

determinations are legal conclusions that the regulation describes as 'reserved to the

Commissioner.'")

Again, it is the task of the ALJ to weigh the evidence.  *Hames*, 707 F.2d at 165;

*Chambliss*, 269 F.3d at 523.  "It is not the place of this Court to reweigh the evidence, or

try the issue de novo, or substitute its judgment…[i]f supported by substantial evidence,

the Secretary's findings are conclusive and must be affirmed." *Id*.  Upon review, the ALJ's

determination of Plaintiff's RFC is based on substantial evidence.  The ALJ acted within

his discretion in interpreting the evidence before him, including the opinions discussed

above as well as the competing evidence and considering it at length in his decision.  "Even

though the record illustrates Plaintiff suffers from several severe impairments, substantial

evidence supports the ALJ's conclusion that Plaintiff's impairments did not prevent him

from performing a modified range of light work as identified in the RFC during the period

at issue.  Ultimately, the ALJ sufficiently explained why certain opinions were less

persuasive and properly considered Plaintiff's ailments when determining his RFC.  (D.E.

14-3, Pages 11-24).  The ALJ "appropriately considered and resolved conflicts in the

evidence, [building] a discernible logical bridge between the persuasiveness [of the

opinions in the record] and those opinions' supportability by and consistency with the

record as whole" sufficient to permit judicial review.  *Wendy M.B. v. Kijakazi*, No. 3:20-

cv-2957-BT, 2022 WL 2704038, at * 4-5 (N.D. Tex. July 11, 2022). While Plaintiff asserts the ALJ erred, the undersigned disagrees and finds Plaintiff is simply asking this Court to reweigh the evidence.

## VI.    CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** the ALJ's decision is supported by substantial evidence, and therefore, that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, the Commissioner's determination be **AFFIRMED**, and this case be **DISMISSED with prejudice**.

Respectfully submitted on August 4, 2022.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).